_____

ROBERT S.,

      Plaintiff,

v.              3:18-CV-357 (ATB)

COMM'R OF SOC. SEC.,
       Defendant.

_____

APPEARANCES:      OF COUNSEL:

LACHMAN & GORTON    PETER A. GORTON, ESQ.
Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.  GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge


**<u>DECISION and ORDER</u>**

   Currently before the Court, is this Social Security action filed by Robert S. ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3).  This matter was referred to me, for all proceedings and

entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with

the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the

consent of the parties. (Dkt. Nos. 4, 6.)  The parties have each filed briefs (Dkt. Nos. 13 and 14) addressing the administrative record of the proceedings before the Commissioner.  (Dkt. No. 8.)[1]

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1967, making him 43 years old on the alleged onset date and 50 years old on the date of the ALJ's January 2018 decision.  Plaintiff reported completing the twelfth grade and some training in masonry.  He previously worked as a laborer and packer.  At the initial level, Plaintiff alleged disability due to pain in the lower back, left hip, and left knee.

### B.     Procedural History

On March 28, 2013, Plaintiff applied for a period of disability and Disability Insurance Benefits as well as Supplemental Security Income ("SSI"), alleging an onset date of December 31, 2010.  Plaintiff's applications were initially denied on June 7, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Marie Greener dated on September 17, 2014.  (T. 26-47, 439-60.)  On December 3, 2014, ALJ Greener issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 10-25, 403-18.)  On June 9, 2016, the Appeals Council denied Plaintiff's request for review.  (T. 1-6, 419-24.)

Plaintiff filed a Complaint in the United States District Court for the Northern District of New York, and this Court ordered remand for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g) upon stipulation of the parties on January 17, 2017.  (T.

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

342, 425-28.) On March 20, 2017, the Appeals Council remanded the case to an ALJ, indicating that there was not an adequate evaluation of the opinion evidence of record. (T. 433.) The Appeals Council instructed that, upon remand, an ALJ should: (1) further consider Plaintiff's maximum residual functional capacity ("RFC") during the entire period at issue and provide the rationale in support of the assessed limitations, with specific references to evidence of record; (2) evaluate the medical opinion evidence (particularly the opinion from consultative examiner Justine Magurno, M.D.) pursuant to the regulations, and explain the weight given to such opinion evidence and the reasons for accepting or rejecting the functional limitations contained in the opinions; (3) possibly request that the non-treating source provide additional evidence and/or further clarification of the opinion; and, (4) if warranted, obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on Plaintiff's occupational base. (T. 434.)

Plaintiff appeared at a subsequent administrative hearing before ALJ John P. Ramos on December 7, 2017, at which a medical expert and VE also testified. (T. 362-402.) On January 4, 2018, ALJ Ramos issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 339-61.) The Plaintiff apparently did not file written exceptions, and the Appeals Council did not initiate review within 60 days, making the ALJ's decision the final decision of the Commissioner as of March 6, 2018. Plaintiff then filed a new Complaint in the United States District Court for the Northern District of New York on March 22, 2018. (Dkt. No. 1 at 1, 4.)

### C.     ALJ Ramos' January 2018 Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. (T. 344-54.) The ALJ found that Plaintiff last met the insured status requirements of the Social

Security Act on March 31, 2016. (T. 344.) The ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 31, 2010, the alleged onset date. (*Id*.) The ALJ further found that Plaintiff has severe impairments, including degenerative disc disease of the lumbar spine, osteoarthritis of the hips bilaterally, depressive disorder, unspecified personality disorder, and alcohol use disorder. (T. 345.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 346-47.) Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), and 12.08 (personality and impulse-control disorders). (*Id*.) The ALJ found that Plaintiff has the RFC to:

> sit for up to six hours in an eight-hour day at 2-hour intervals. [He] can stand for up to two hours in a day at 2-hour intervals. [He] can walk for up to two hours in a day at 2-hour intervals. [He] can frequently lift up to ten pounds. [He] can occasionally lift 11 to 20 pounds. [He] can frequently carry up to ten pounds. [He] can occasionally carry 11 to 20 pounds. [He] can continuously reach overhead with the right upper extremity. [He] can continuously reach in all other directions with the right upper extremity. [He] can continuously reach overhead with the left upper extremity. [He] can continuously reach in all other directions with the left upper extremity. [He] can continuously push and pull with the right upper extremity. [He] can continuously push and pull with the left upper extremity. [He] can continuously handle, finger and feel with the right hand. [He] can continuously handle, finger and feel with the left hand. [He] can continuously operate foot controls with the right foot. [He] can continuously operate foot controls with the left foot. [He] can never climb ladders or scaffolds. [He] can occasionally climb stairs and ramps. [He] can continuously balance. [He] can continuously stoop. [He] can occasionally crawl. [He] can never work at unprotected heights. [He] can continuously work with moving mechanical parts. [He] can continuously be exposed to humidity and wetness. [He] can continuously be exposed to dust, odors, fumes and concentrated pulmonary irritants. [He] can continuously be exposed to extremes of temperature. He can continuously be exposed to vibrations. He retains the ability to understand and follow simple instructions and directions; perform

simple tasks with supervision and independently, and maintain attention/concentration for simple tasks. He can regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks. He can handle reasonable levels of simple work-related stress in that he can make decisions directly related to the performance of simple work and handle usual work place[] changes and interactions associated with simple work.

(T. 347.) Although this very specific RFC would appear to be most consistent with simple sedentary work, the ALJ characterized it as a limited range of unskilled light work. (T. 353.)

The ALJ determined that Plaintiff is unable to perform any past relevant work. (T. 352.) Based on the testimony of the VE, the ALJ found that there are jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 352-53.)[2] The ALJ therefore concluded that Plaintiff is not disabled. (T. 353-54.)

### D. Relevant Evidence Before the ALJ

#### 1. Dr. Leong's Medical Expert Opinion

In August 2017, Dr. Leong responded to medical interrogatory indicating Plaintiff did not meet or equal any listed impairment. (T. 640.) She opined

> this individual retains ability to lift and carry 20 pounds occasionally and 10 pounds frequently. Sit six hours in an eight hour workday with normal work breaks. Stand and walk for a combined period of four hours in an eight hour workday with normal work breaks. There are no limitations in regards use the hands or feet. Ramps and stairs are occasionally. No ladders or scaffolds. Balancing and stooping are continuously. Kneeling, crouching and crawling are occasionally. There are no visual or communicative limitations. He

---

[2] The ALJ found that Plaintiff could perform three particular unskilled, light work jobs, based on the testimony of the VE. The VE acknowledged that he deviated from the sitting and standing requirements from the Dictionary of Occupational Titles ("DOT") for these occupations in opining that a person with the recited RFC could perform those jobs. (T. 353, 394-95.) Based on a modified hypothetical from the ALJ (assuming that the claimant required use of a cane to ambulate), the VE also opined that the claimant could perform three particular unskilled, sedentary occupations. (T. 395-97.)

should avoid unprotected heights. Otherwise, there are no other environmental restriction[s.]

(T. 643, 644-46.)   Dr. Leong also concluded that Plaintiff did not require a cane for ambulation. He could continuously reach, handle, finger, feel, push/pull, balance and stoop; he could occasionally climb stairs and ramps, kneel, crouch and crawl; he could never climb ladders or scaffolds, tolerate unprotected heights, continuously tolerate moving mechanical parts, operate a motor vehicle, nor could he tolerate humidity, wetness, pulmonary irritants, extreme cold/heat, vibrations, or very loud noise.  (T. 646-49.)

Dr. Leong testified at the December 2017 administrative hearing about Plaintiff's limitations.  She diagnosed Plaintiff 's degenerative disc disease of the lumbar spine and osteoarthritis of the hip.  (T. 378.)  She again stated that the Plaintiff's use of a cane was not medically necessary.  (*Id*.)  On cross-examination by Plaintiff's counsel, Dr. Leong acknowledged that she was not board certified in orthopedic surgery or neurosurgery and had not actually treated patients since 1999.  (T. 383-84.)  She noted that the record indicated Plaintiff's ankle jerk and knee jerk deep tendon reflexes were absent on January 24, 2017, with the possibility of some pathology in the lumbar region, including nerve root involvement.  (T. 386-87.)

The ALJ afforded significant weight to Dr. Leong's assessment and noted that it was the basis for the ALJ's RFC findings.  (T. 349.)  The ALJ noted that Dr. Leong had an opportunity to review all of the evidence in record.  She was board eligible in pain management, which provided her with knowledge and training that could be reasonably expected to give her greater insight into the limitations imposed by Plaintiff's physical impairments.  (*Id*.)  The ALJ also noted, as a medical expert with the Social Security Administration, Dr. Leong had knowledge of the disability program.  (*Id*.)  Dr. Leong "also testified that her opinion was based on a review of

the objective findings and diagnostic studies, and her opinion was based on the totality of the medical records." (*Id.*)

## 2. Dr. Magurno's Consultative Opinion

In June 2013, Dr. Magurno noted that Plaintiff appeared to be in moderate distress from pain and quite irritable at the beginning of the exam; but he became calmer as the exam progressed. (T. 276.) His gait was left antalgic, and he walked flexed at the hips. Plaintiff declined heel and toe walking, his squatting was minimal, and when he stood, he stood only on the right lower extremity. (*Id.*) Plaintiff had a normal stance, used no assistive devices, needed no help changing for the exam, was unable to get on the exam table, and had mild difficulty rising from a chair. (T. 277.) He had limited range of motion in the lumbar spine and decreased sensory response in his feet bilaterally. (T. 277-78.) Plaintiff had trouble with a zipper due to bilateral tremor and reported that he had experienced tremors for a little bit of time. (T. 275, 278.) Dr. Magurno diagnosed low back pain with radicular symptoms, abdominal pain, rash, tobacco abuse, and tremor. She opined Plaintiff should avoid heights, ladders, and uneven ground. (T. 278-79.) Dr. Magurno concluded Plaintiff had marked limitations for walking, standing, stair climbing, lifting, carrying, reaching, pushing and pulling; moderate limitations for sitting; and mild limitations for fine motor skills. (T. 279.) The ALJ afforded partial weight to Dr. Magurno's opinion, based on her programmatic expertise and the fact that she had examined the Plaintiff. (T. 349.)

## 3. Treating Source Opinions

In August 2014, Plaintiff's treating physician Khalid Sethi, M.D., from Southern New York NeuroSurgical Group, noted lumbar disc degeneration at L2-S1, without any neural compression. Dr. Sethi predicted "probable side [e]ffects that may or may not happen" including

pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 304.)

Dr. Sethi opined that, as a result of those "probable side [e]ffects," Plaintiff would be off task more than 20 percent of the day and absent four days per month.  (T. 304-05.)  He opined that Plaintiff could sit for approximately three hours, should change positions every 30 minutes, and could stand/walk for approximately three hours.  Plaintiff could lift five to ten pounds up to three hours per day, could lift up to five pounds for three to eight hours per day, and could lift up to 20 pounds for an unspecified period of time.  (T. 305.)  These limitations were found to have been present since May 23, 2006.  (*Id*.)

In September 2014, treating physician Micah Lissy, M.D., from UHS Orthopedics Binghamton, noted Plaintiff's myofascial muscle pain, which would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 306.)  Plaintiff would be off task more than 20 percent of the day and absent more than four days per month.  (T. 306-07.)  Dr. Lissy noted that Plaintiff was taking hydrocodone, causing drowsiness, confusion, and balance/coordination effects.  (T. 307.)  He opined that Plaintiff could sit for three hours out of an eight-hour day, should change position every hour, could stand/walk for two hours per day, could lift up to 10 pounds for up to three hours per day, and could never lift over 10 pounds.  (T. 307.)  These limitations had been present since February 28, 2014.  (*Id*.)

The September 2014 medical source statement of treating physician Dr. Ashok, from Lourdes Primary Care Associates, did not list any diagnosis, but opined that Plaintiff's conditions would cause pain, fatigue, diminished concentration and work pace, and the need to rest at work.  (T. 308.)  Plaintiff would be off task more than 33 percent of the day and absent more than four days per month.  (T. 308-09.)  Dr. Ashok noted that Plaintiff was on Loratadine, Omeprazole, and hydrocodone, with side effects including nausea, dizziness, and decreased

concentration. (T. 309.) He found that Plaintiff could sit for approximately two to three hours out of an eight-hour day, should alternate sitting/standing every 30 minutes to one hour, should change positions every 30 minutes, could stand/walk for one hour, should not lift over 10 pounds, could lift up to 10 pounds up to three hours per day, and could lift up to five pounds for three to eight hours per day. (T. 309.) These limitations were present from the date of Dr. Ashok's opinion in September 2014. (*Id*.)

In October 2017, treating physician Kamlesh Desai, M.D., from Orthopedic Associates, noted Plaintiff's lumbar radiculopathy at L5-S1 and L2-L3, causing pain, fatigue, diminished concentration and work pace, and the need to rest at work. (T. 691.) He opined that Plaintiff would be off task more than 20 percent of the day and absent four days per month. (T. 691-92.) Dr. Ashok noted Plaintiff was taking Oxycodone, causing a change in concentration. (T. 692.) He found that Plaintiff could sit for two to three hours out of an eight-hour day, should change positions every 45 minutes to an hour, could stand/walk for two to three hours per day, and could occasionally lift up to 10 pounds. (*Id*.) These limitations had been present since 2006. (*Id*.)

As discussed in greater detail below, the ALJ afforded little weight to the opinions from Drs. Sethi, Lissy, Ashok, and Desai. (T. 304-09, 349, 691-93.) The ALJ indicated these opinions were not given more weight because they were inconsistent with the treatment notes, clinical findings, and diagnostic testing of record, which the ALJ subsequently summarized. (T. 350-51.)

### 4. Plaintiff's Mental Impairments

At the administrative hearing, Plaintiff indicated he was being treated for depression. (T. 368-70.) The record does not appear to contain a medical opinion regarding Plaintiff's mental limitations, but indicates he was referred for mental health treatment for depressive symptoms.

(T. 565-615, 655-89, 695-719.)  The ALJ found Plaintiff's depressive disorder, unspecified; personality disorder; and alcohol use disorder to be severe.  The ALJ concluded that Plaintiff had mild restriction in understanding, remembering or applying information; moderate difficulties in interacting with others; mild difficulties in maintaining concentration, persistence or pace; and mild difficulties in adapting or managing oneself.  (T. 345-46.)

### E.  Issues in Contention

In his brief, Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ improperly substituted his lay opinion for undisputed medical opinions on issues of work pace and/or attendance caused by physical impairments.  (Dkt. No. 13, at 14-17.)  Plaintiff maintains that all of the medical opinions specifically addressing these subjects found limitations to Plaintiff's work pace to be greater than 20 percent, and opined that Plaintiff would be absent more than four days per month.  (*Id*. at 15.)

Plaintiff additionally argues that the ALJ failed to give controlling or even significant weight to the opinions from Plaintiff's treating physicians.  The ALJ further erred in affording significant weight to the opinion of medical expert, Dorothy Leong, M.D., because Dr. Leong did not examine or treat Plaintiff, she is not a specialist, she is not board certified, she has not treated patients for years, she did not discuss all of the medical records, and she omitted significant evidence.  (*Id*. at 17-24.)  Plaintiff also maintains Dr. Leong's opinion is inconsistent with, and contrary to, the opinions of all the treating physicians, particularly on the issue of sitting.  (*Id*. at 19-20.)

Plaintiff argues that he cannot meet the sitting demands of sedentary work and that the ALJ's sit/stand option is not supported by substantial evidence.  (*Id*. at 20-21.)  Plaintiff further contends that the consultative examiner, Dr. Magurno, used ambiguous terms including

10

"moderate" in her opinion, which were insufficient to constitute substantial support for the ALJ's RFC determination. (*Id*.) Plaintiff also argues that the ALJ did not adequately account for his psychiatric impairments (particularly his issues in dealing with other people) by limiting him to simple work. (*Id*. at 24-25.) Finally, Plaintiff argues the Step Five determination is not supported by substantial evidence because the ALJ posed a hypothetical question to the VE that did not properly account for the full extent of Plaintiff's limitations in sitting, the need to change positions, psychiatric issues, and work pace/attendance. (*Id*. at 25.)

In his brief, Defendant argues that the ALJ properly evaluated the medical evidence of record and "crafted an exceptionally detailed RFC that accounted for all of Plaintiff's limitations." (Dkt. No. 14, at 6-11.) Defendant maintains that Dr. Magurno's report and Dr.'s Leong's opinion both constituted substantial evidence in support of the ALJ's decision. (*Id*. at 8-9.) Defendant contends that the record also "provides other evidence in support of the ALJ's determination, including [] contemporaneous medical records, his conservative course of treatment, and Plaintiff's own statements and self-described activities of daily living." (*Id*. at 9-10.) Defendant also argues that the "ALJ thoroughly considered the opinions from Plaintiff's treating physicians and set forth persuasive reasons for giving them little weight" and that "none of the doctors provided a compelling diagnosis to explain these restrictions [on off-task time and absenteeism] except alluding to Plaintiff's back pain." (*Id.* at 10-11.) Defendant maintains that no findings were set forth to support these assessments, which were contradicted by the medical evidence. (*Id*.) Defendant argues that the ALJ properly concluded these treating opinions were inconsistent with the treatment notes, clinical findings, and diagnostic testing of record. (*Id*. at 11.) Defendant further contends the ALJ properly determined Plaintiff could work at Step Five. (*Id*. at 11-12.)

In his reply, Plaintiff argues "Defendant never addresses the legal requirement that undisputed medical opinion may only be overcome based on a contrary medical opinion or an 'overwhelmingly compelling' circumstantial critique." (Dkt. No. 17, at 1.) Plaintiff maintains "Defendant does not point to any contrary medical opinion on the issue of work pace or attendance and the ALJ did not provide an overwhelmingly compelling lay analysis." (*Id.*)

Plaintiff also contends that Defendant's argument that the ALJ is permitted to choose between properly submitted opinions is an overstatement because all medical opinions are subject to scrutiny and application of the regulatory factors. (*Id.* at 1-2.) Finally, Plaintiff argues Defendant failed to respond to plaintiff's arguments pertaining to psychiatric limitations and the need for a sit/stand option. (*Id.* at 2.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

13

> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S ANALYSIS OF THE MEDICAL EVIDENCE AND HIS RFC FINDINGS.

### A.   Applicable Law

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC

is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No.

11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at

*2)).

In rendering an RFC determination, the ALJ must consider objective medical facts,

diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms,

including pain and descriptions of other limitations.  20 C.F.R. § 416.945.  *See Martone v. Apfel*,

70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)).  An ALJ must specify the functions that a plaintiff is capable of performing,

and may not simply make conclusory statements regarding a plaintiff's capacities.  *Martone*, 70

F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 09-CV-1120, 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7). Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions which indicate "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. *Id*. "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require the use of arms and hands to grasp and to hold and turn objects[.]" *Id*.

The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than

about two hours of an eight-hour workday. Sitting would generally total about six hours of an eight-hour workday. SSR 96-9p, 1996 WL 374185, at *3.

" . . . [T]he concept of sedentary work contemplates substantial sitting . . ., [and] alternating between sitting and standing may not be within the concept of sedentary work." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citations omitted). An "individual [who] may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting . . . is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work. . . . Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

## 2. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at

375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### 3. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, No. 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

**B.     Analysis**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly substituted his opinion for undisputed medical opinions on issues of work pace and/or attendance.  Plaintiff contends the ALJ improperly failed to give controlling or significant weight to the opinions from Plaintiff's treating physicians, while affording significant weight to non-examining medical expert Dr. Leong.  (Dkt. No. 13, at 14-24.)  He also argues that he cannot meet the sitting demands of sedentary work, and that the ALJ's sit/stand option is not supported by substantial evidence.  (*Id*. at 20-21.)  Plaintiff further contends that the consultative examiner, Dr. Magurno, used ambiguous terms including "moderate" in her opinion, which were insufficient to constitute substantial support for the ALJ's RFC determination.  (*Id*.)  Plaintiff also argues that the ALJ did not adequately account for his psychiatric impairments (particularly his issues in dealing with other people) by limiting him to simple work.  (*Id*. at 24-25.)  The Court finds many of these arguments persuasive for the following reasons and orders a remand.

### 1.  Plaintiff's Propensity to be Off-Task and Absent from Work

The VE testified on December 7, 2017 that an employee who was off-task for more than 10 or 15 percent of the time (depending on whether the job called for production pace) or who had more than two unexcused absences per month could not maintain employment in the national economy.  (T. 397-98).  Four different treating physicians opined that, as a result of fluctuating symptoms of lumbar disc degeneration, myofascial muscle pain, and/or lumbar radiculopathy,[3] Plaintiff would be off-task greater than 20% of the workday and would have four

---

[3] As the ALJ pointed out, Dr. Ashok's medical source statement did not list a diagnosis for Plaintiff.  (T. 308, 350.)  However, the ALJ did not mention that Dr. Ashok's treatment records listed a diagnosis of multilevel degenerative lumbar disc disease.  (T. 317, 319).

or more absences per month. (T. 304-09, 691-92). These opinions were not contradicted by any other medical opinion of record, including those of Dr. Magurno and Dr. Leong. (T. 275-79, 380-81.) "[W]hen a medical opinion stands uncontradicted, '[a] circumstantial critique by nonphysicians,

however thorough or responsible, must be overwhelmingly compelling in order to overcome' it." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.") (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)). *See also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.'").

The ALJ gave little weight to the opinions of the four treating physicians regarding Plaintiff's propensity to be off-task at work because they failed to explain their findings in treatment records and because "they are inconsistent with the treatment notes, clinical findings and diagnostic testing of record." (T. 350). However, because treating physicians appropriately focus on a patient's diagnosis and treatment, it is unreasonable for the ALJ to expect that Plaintiff's treating physicians would document and support detailed functional assessments in their treatment notes. *See, e.g., Oakley v. Colvin*, No. 3:13-CV-679 (GLS/ESH), 2015 WL 1097388, at *11 n. 22 (N.D.N.Y. Mar. 11, 2015) ("Absent a request for forensic opinions, treating medical sources' clinical notes focus on diagnoses and treatment modalities. They

typically do not delve into patients' specific physical capacities to lift, carry, sit, stand, walk, stoop, climb, etc."); *Ubiles v. Astrue*, No. 11-CV-6340T, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) ("it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits.").

This case is distinguishable from *Smith v. Berryhill*, 740 F. App'x 721, 723-26 (2d Cir. 2018). In *Smith*, the Second Circuit affirmed the ALJ's decision to give limited weight to three treating physicians who found that Smith would be off task more than 20% of the work day and would be unable to meet competitive attendance standards. *Id.* In *Smith*, unlike this case, there was other substantial medical evidence contradicting the treating physicians' opinions, and the ALJ properly analyzed the contradicting evidence. One treating physician was "undermined by his treatment notes, as well as treatment notes by others in his medical group . . . ." *Id.* at 724. The court found that "[o]ther evidence in the record offers substantial evidence to support the RFC ruling," and that "[t]he ALJ relied upon the findings and conclusions of other treating physicians . . . ." *Id.* at 725.

In this case, as documented in the summary of the treating physician's opinions above, and as further discussed below, there was considerable medical evidence of record regarding Plaintiff's pain and other symptoms relating to his degenerative disc disease and lumbar radiculopathy, and the side effects of his medications, to support the treating physicians' opinions that Plaintiff would miss work or be off-task during the workday. The ALJ's analysis was not sufficiently compelling to overcome this uncontradicted opinion evidence of the four treating physicians. [4]

---

[4] The ALJ found Plaintiff has "severe" mental impairments, including depressive disorder, that would significantly limit his ability to perform basic work activities. (T. 346.) As noted above, the ALJ determined that Plaintiff only had only mild or moderate limitations in the four broad

## 2. **Plaintiff's Other Exertional Limitations**

The opinions of the four treating physicians were also inconsistent, in other material respects, with the ALJ's RFC determination, which was largely based on the opinion of medical expert, Dr. Leong. The treating physicians opined that, in an eight-hour workday, Plaintiff could only sit for between two and three hours, could walk/stand for between one and three hours, and needed to change positions between every 30 minutes and every hour. (T. 305, 307, 309, 692). The ALJ's RFC findings, on which the VE and the ALJ based their opinions that Plaintiff could perform particular, unskilled, light occupations in the national economy, were that, during an eight-hour workday, Plaintiff could sit for up to six hours and stand or walk for up to two hours, all at two-hour intervals. As noted above, the VE's opinion reflected a deviation from the sitting and standing requirements for these occupations set in the DOT. (T. 347, 353, 392, 394-95.)

A claimant's ability to sit or stand for a sustained period, or his/her need frequently to alternate between sitting and standing, are critical factors in determining whether he/she can perform light or sedentary work, as defined above. The VE opined that Plaintiff could perform three unskilled light work occupations, notwithstanding that the ALJ's RFC did not meet the sitting and standing requirements for the full range of light work. (See note 2, above.) The VE also opined, based on an alternative hypothetical, that Plaintiff could perform three unskilled

---

areas of mental functioning, including mild difficulties in maintaining concentration, persistence, and pace. (T. 345.) In assessing Plaintiff's RFC, the ALJ found that he sufficiently accounted for Plaintiff's mental limitations by limiting him to simple work. (T. 351). The ALJ reached his RFC findings regarding Plaintiff's mental limitations based on his own analysis of the underlying medical records and other evidence, without an opinion or analysis from a reviewing, examining, or treating source. (T. 351.) The opinions of the four treating physicians appeared to be based on the pain related to Plaintiff's physical symptoms and the side effects of his medication, rather than mental impairments. To the extent the ALJ relied on his lay analysis of Plaintiff's mental limitations in rejecting the findings of the treating physicians with respect to Plaintiff's ability to stay on task, or his propensity for unexcused absences for work, the ALJ lacked sufficient support to do so, and committed error.

sedentary jobs. While Dr. Leong and the ALJ found that Plaintiff could sit for six hours in a workday, consistent with performing sedentary work, the treating physicians all found that Plaintiff could not meet those requirements and would be required to alternate between sitting and standing more frequently than the ALJ determined.

"[T]he DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict." *Brault v. Soc. Sec. Admin.*, Com'r, 683 F.3d 443, 446 (2d Cir. 2012) (citing See SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000)). To the extent the ALJ erred in making RFC findings regarding Plaintiff's limitations for sitting and standing that were inconsistent with the opinions of the treating physicians, the VE's opinions might no longer constitute substantial evidence because the VE would have been denied the opportunity to evaluate the appropriate sitting and standing limitations. Nor could the VE properly determine whether the appropriate sitting and standing limitations were consistent with the requirements of the DOT for particular occupations, or whether an opinion deviating from the DOT was warranted. *See, e.g., Gravel v. Barnhart*, 360 F. Supp. 2d 442, 451 & n.22 (N.D.N.Y. 2005) (when the VE did not explain why claimant could perform particular light work occupations when the hypothetical RFC included limitations inconsistent with a full range of light work, "the jobs cited by the VE do not constitute substantial evidence in support of the ALJ's determination"); *Diaz v. Astrue*, No. 3:11-CV-317, 2012 WL 3854958, at *4 (D. Conn. Sept. 5, 2012) ("Reviewing courts have applied SSR 00-4p and held that the Commissioner did not produce substantial evidence that there are jobs in the national economy when the ALJ fails to inquire about an 'apparent unresolved conflict' between the VE's testimony and the DOT.").

There are instances in which the opinion of a non-examining physician can constitute substantial evidence in support of an ALJ's opinion. But that is not necessarily true in all cases,

and each case must be analyzed individually. *See, e.g., Burgess v. Astrue*, 537 F.3d at 128-29 (2d Cir. 2008) ("not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician."); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (finding ALJ violated the treating physician rule in part by crediting the findings of a doctor who performed "only one consultative examination" of claimant, rather than treating physician). The ALJ did explain, at some length, why he gave more weight to the opinions of the non-examining medical expert, Dr. Leong, than those of the treating physicians. (T. 349-52.) However, the ALJ appeared to give little or no consideration to at least one of the criteria relevant to the evaluation of treating physicians, and selectively cited medical evidence supporting his conclusion, while ignoring contrary evidence. *See, e.g., Royal v. Astrue*, No. 5:11-CV-456 (GTS/ESH), 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJs are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion) (citing, *inter alia*, *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)) (Rep't-Rec.), *adopted*, 2012 WL 5438945 (N.D.N.Y. Nov. 7, 2012).

One of the factors that the ALJ should explicitly consider in the treating physician analysis is whether the physician is a specialist. *See Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019). The ALJ noted that "[a]lthough she is neither an examining nor a treating physician, Dr. Leong is board eligible in pain management, that provides her with the knowledge, and training, which could reasonable be expected to give her greater insight into the limitations imposed by the [plaintiff's] physical impairments." (T. 349). The ALJ does not mention that, as developed during the hearing testimony, Dr. Leong is not board certified in any area, that she became "board eligible" in pain management after a residency 27 years prior, and that she has

not treated patients since 1999. (T. 383-84). Nor did the ALJ mention, in his decision, that three of the treating physicians who completed medical source statements were board certified in neurological surgery (Dr. Sethi), orthopedic surgery (Dr. Lissy), or orthopedics (Dr. Desai), the types of specialists who, Dr. Leong acknowledged, are often involved in diagnosis and treatment of Plaintiff's conditions.[5] (T. 314, 331-34, 379, 381, 616-17).

In explaining the relative weight he gave to the opinions of Dr. Leong and the treating physicians, the ALJ stated that the Plaintiff "did not take medication for years," which the ALJ found to be "not consistent with disabling pain." In support of this statement, the ALJ cited two duplicate pages from the medical evidence—treatment notes, apparently from June 2013, of Dr. Kyung In Kim, which list "none" for medications, but which diagnose chronic low back pain and lumbar spondylosis and indicates that the Plaintiff "needs a nerve block." (T. 280, 311, 350.) The ALJ's decision does not mention that the 2013, 2014, and 2017 medical source statements and treatment notes of the four treating physicians document that Plaintiff was being treated with various medications over time, including opioids; that those medications had not controlled his chronic pain; and that he suffered side effects from his medications, including nausea, drowsiness, dizziness, confusion, decreased concentration, and balance problems. (T. 287-89, 305, 307, 309, 316-18, 333, 336, 616-17, 652, 692). Although plaintiff's treatment was conservative and did not involve surgery, he was also, at various times, treated with physical therapy and corticosteroid injections. (T. 616). In any event, "the opinion of the treating physician [should not] be discounted merely because he has recommended a conservative treatment regimen." *Burgess v. Astrue*, 537 F.3d at 129 (citation omitted).

---

[5] See https://www.nyuhs.org/find-a-provider/profile/khalid-sethi/ ; https://www.nyuhs.org/find-a-provider/profile/micah-lissy/ ; https://www.nyuhs.org/find-a-provider/profile/kamlesh-s-desai/ .

The ALJ emphasized several instances in which Plaintiff was not cooperative with doctors or declined various treatment options, suggesting that this was also inconsistent with disabling pain. (T. 350.) However, other medical records from Plaintiff's treating doctors make clear that he had tried various recommended treatment modalities and different medications with limited relief, and, consistent with diagnoses of anxiety and depression, was frustrated with his chronic pain. (See, e.g., T. 336, 338 (9/10/2014: Plaintiff has not been helped by hydrocodone, he has "completed physical therapy with worsening of his complaints," and "had an SI joint injection that did not help"); 318, 324 (12/10/2013: physical therapy and TENS unit have not relieved pain, "doing physical therapy exercises still at home, but he was very frustrated and was very anxious and crying due to his pain"); 616, 652 (1/24/17 & 3/31/17: Plaintiff has been treated with some medication, physical therapy program, and multiple corticosteroid injections and "anti-inflammatory medication along with the narcotic pain medication so far has not been helpful"). The ALJ selective citation of medical evidence does not provide substantial evidence to support his suggestion that Plaintiff was uncooperative with examinations and treatment because he was not truly suffering from debilitating pain.

In support of his rejection of the opinions of the four treating physicians, the ALJ further stated:

> [A]t appointments, none of the treating doctors named above gave any indication the claimant was limited in his ability to sit. Furthermore, none of them explained a basis for a sitting limitation in their actual opinions. In fact, to the contrary, they noted that the claimant has no neural compression. . . . Recent orthopedic records indicated that the clamant walked with a normal gait for his age. . . . Dr. Leong confirmed that use of a cane was not medically necessary. Orthopedic records indicated that the strait leg raise test was negative . . . ."

(T. 350-51). As noted above, it is unreasonable to expect a treating physician, who is focusing on diagnosis and treatment, to make detailed observations about a patient's functional limitations

in treatment notes.  In fact, treating physician, Dr. Desai, in March 2017 treatment notes, stated that various of Plaintiff's activities, including "prolonged sitting" aggravated his pain symptoms. (T. 652).  In June 2013, consultative examiner, Dr. Magurno, similarly noted that Plaintiff's pain levels worsened when, inter alia, Plaintiff tried to "sit, or stand a while" and found that he had moderate limitations for sitting.  (T. 275, 279).[6]  While the treating physician's medical source statements were "check-box" forms that did not detail the basis for their functional findings, Dr. Leong also completed a check-box form, and did not explain how her summary of the medical records of examining doctors supported her contrary conclusions regarding Plaintiff's capacity for prolonged sitting.  (T. 639-50).

The ALJ emphasized the finding of two treating doctors from 2013 and 2014, who noted that Plaintiff had no neural compression.  (T. 304, 319, 350).  The ALJ did not acknowledge that, in 2017, Plaintiff's treating orthopedic doctor (Dr. Desai) diagnosed lumbar radiculopathy (616, 652, 691), a "disease involving the lumbar spinal nerve root [that] can manifest as pain, numbness, or weakness of the buttock and leg . . . [and] is typically caused by a compression of the spinal nerve root."[7]  The ALJ's opinion also did not report Dr. Leong's testimony that Dr. Desai's testing of Plaintiff revealed the absence of deep tendon reflexes, which would indicate

---

[6] "[T]he opinion of a consulting doctor that plaintiff had 'moderate limitations for sitting,' without more, does not amount to substantial evidence supporting the ALJ's determination that she could sit for six hours during an eight-hour workday."  *Young v. Comm'r of Soc. Sec.*, No. 7:13-CV-734 (ATB/NAM), 2014 WL 3107960, at *9 & n. 18 (N.D.N.Y. July 8, 2014) (citing, *inter alia*, *Petersen v. Astrue*, No. 11-CV-116 (GTS/VEB), 2012 WL 4449857, at *4-5 (N.D.N.Y. Aug.10, 2012) (the ALJ afforded "great weight" to Dr. Magurno's opinion; however, Dr. Magurno's assessment that plaintiff had "marked limitations for walking, standing, bending, pushing, pulling, lifting, and carrying" and "moderate limitations for sitting an[d] reaching" do not support the ALJ's conclusion that plaintiff retained the RFC to perform sedentary work.)).

[7] https://www.emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html

that "[t]here may be some pathology in regards to the lumbar region. Nerve root involvement." (T. 387, 643.) The ALJ quoted Dr. Desai's treatment notes that Plaintiff had a "normal gait for his age" (T. 350, 652), but did not mention that Dr. Desai also noted, e.g., that Plaintiff's had an antalgic gait (i.e., a limp that develops in response to pain),[8] that the straight leg raising test resulted in pain to Plaintiff bilaterally (T. 652),[9] and that Plaintiff used a cane for ambulation and support. (T.616, 652.) Plaintiff's brief points out numerous other examples of medical evidence that are inconsistent with the selective medical evidence cited Dr. Leong, and by the ALJ in giving her opinions regarding Plaintiff's functional limitations greater weight than that of the treating doctors. (Dkt. No. 13 at 19, 22-23.)[10]

In sum, the Court finds that the ALJ's analysis of the medical opinion evidence, as well as Plaintiff's RFC findings with respect to Plaintiff's exertional limitations, are not supported by substantial evidence. On remand, the ALJ should fairly review the totality of the medical evidence in determining the weight to be given to the opinions of Plaintiff's treating physicians.

---

[8] See https://www.ncbi.nlm.nih.gov/medgen/533963

[9] The straight leg raise test . . . is a fundamental neurological maneuver during physical examination of the patient with lower back pain aimed to assess the sciatic compromise due to lumbosacral nerve root irritation. https://www.ncbi.nlm.nih.gov/books/NBK539717/

[10] The ALJ did not address the bilateral tremor diagnosed by Dr. Magurno, or the limitations she found, including marked limitations for reaching, pushing and pulling, and mild limitations for fine motor skills. (T. 279, 349.) While the treatment records do not appear to address a bilateral tremor, the ALJ did not mention this consultative examiner's diagnosis of a tremor or Plaintiff's difficulty using a zipper during the examination because of bilateral tremor either in determining Plaintiff's severe impairments or his RFC. (T. 278-79, 345-46, 349.) The ALJ only afforded partial evidentiary weight to Dr. Magurno's opinion. However, the ALJ's failure to discuss the evidence of bilateral tremor is troubling given his RFC finding that Plaintiff could continuously reach, push/pull, handle, finger and feel with the bilateral upper extremities. (T. 349, 347.) On remand, the ALJ should address this finding by Dr. Magurno, and its possible effects on Plaintiff's RFC.

### 3. The ALJ's Step Five Determination and Nature of Remand

As discussed above, the ALJ's errors in the evaluation of the opinion evidence of the treating physicians infected the ALJ's RFC determination, undermined the opinion of the VE that Plaintiff could perform work in the national economy, and tainted the ultimate decision that Plaintiff was not disabled. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

On remand, the Commissioner, perhaps in light of additional medical evidence, may be able to articulate why controlling weight should not be assigned to the opinions of the treating physicians which contradicted the ALJ's RFC determination and the finding that Plaintiff was not disabled. *See, e.g.*, *Smith v. Berryhill*, *supra*. Thus, this Court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). On remand, the Commissioner should properly analyze the opinions of the treating physicians and the other medical evidence in re-assessing Plaintiff's RFC and his ability to perform competitive work in the national economy.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the opinions of the treating physicians and other medical and non-medical evidence, an appropriate determination of Plaintiff's RFC and his ability to perform other jobs at Step Five over time, and other further proceedings, consistent with this decision, and it is

**ORDERED**, that the Clerk enter judgment for the **PLAINTIFF**.


Dated: September 18, 2019

Andrew T. Baxter
U.S. Magistrate Judge